***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Jones, along with the briefs and arguments on appeal. The appealing party has shown good ground to amend the prior Opinion and Award. Accordingly, the Full Commission REVERSES the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement as
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Southern Flooring and Acoustical was insured during the time of plaintiff's employment by USFG for the period of March 31, 1973 through 1983. Southern Flooring and Acoustical was insured by Kemper Insurance Company from March 31, 1969 through March 31, 1973.
4. Documentation from the Social Security Administration was stipulated into evidence as Stipulated Exhibit 1. An average weekly wage may be determined from this documentation.
5. Industrial Commission forms and medical documentation were stipulated into evidence as Stipulated Exhibit 2.
6. Plaintiff's answers to defendant's third set of interrogatories were stipulated into evidence as Stipulated Exhibit 3.
7. The issues before the undersigned are: (i) whether plaintiff suffers from a compensable occupational disease; (ii) if so, what compensation, if any is due plaintiff; (iii) whether plaintiff is entitled to a ten (10%) percent penalty pursuant to N.C.G.S. § 97-12; (iv) whether plaintiff is entitled to attorney fees for the unreasonable defense of this matter; and (v) whether N.C.G.S. § 97-60 through N.C.G.S. §97-61 apply to this case?
 ***********
Based upon all of the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. The plaintiff was employed by defendant Southern Flooring and Accoustical Company from 1969 to 1983.
2. From 1969 through 1978, plaintiff was a "field installer" at Southern Flooring and Accoustical Company. In this position, the plaintiff went from job site to job site installing ceilings and floors. Very often, this involved the demolition and removal of the old ceilings and/or floors containing asbestos. The demolition and removal process created a large amount of dust, and plaintiff came in contact with airborne asbestos.
3. Furthermore, many of the ceiling tiles the plaintiff installed were made with asbestos. Plaintiff recalls that "Asbestos Board" was printed on the side of the packaging and that the tiles were purchased from "Asbestos Fabricators" in Charlotte, North Carolina. When installing ceilings, the plaintiff was required to cut the tiles to fit them together in the ceiling space of that particular room. Plaintiff cut the ceiling tiles with an electric saw, and this was a very dusty process.
4. The plaintiff also installed floor tiles. "Asbestos Tile" was written on the packaging of the product. The plaintiff cut this tile with a tile cutter when it had to be fitted. Sometimes the plaintiff had to install tile over an existing asbestos floor, and in these cases he ran a buffer and sander on the existing floor to "rough it up." This created a lot of airborne dust.
5. Plaintiff estimated he worked with asbestos thirty to forty percent of the time while working as a field installer for Southern Flooring and Acoustical. From 1969 through 1978, through his work with Southern Flooring and Acoustical Company, over any given 7-month period, plaintiff was exposed to asbestos dust for 42 to 56 days.
6. Plaintiff indicated the environment above all the ceilings in which he worked were dusty and contained air ducts and insulated pipes. Plaintiff could not identify all of the types of insulation that was used on the pipes.
7. Throughout his employment with Southern Flooring and Acoustical as a field installer plaintiff did not use any breathing protection and was not warned about the dangers of asbestos.
8. Subsequent to 1978, plaintiff progressed with defendant-employer to become a supervisor for approximately three (3) to four (4) years, a salesman on a part time basis and part owner for the last four (4) to five (5) years of his employment with defendant-employer.
9. In approximately 1983 plaintiff resigned from Southern Flooring and Acoustical to start his own ceiling and flooring business, which was called "Gainey Acoustical." The company eventually employed approximately eighteen to twenty installers, one estimator, and one sales person. The plaintiff did not do any of the actual labor with his company. He stayed in the office all the time scheduling jobs and running the business. The plaintiff sold this business in 1995 because he was physically unable to work at all.
10. Plaintiff was first diagnosed with asbestosis by Dr. Chrysler in 1997. The plaintiff began treatment with Dr. Vorwald in 1998. In April of 1998, Dr. Berry read the plaintiff's chest x-rays and also diagnosed asbestosis.
11. Dr. Vorwald referred plaintiff to Dr. Curseen, a pulmonologist with the Lake Norman Center for breathing disorders. At the time, plaintiff was continuing to have difficulty with breath control when climbing steps or walking. Dr. Curseen determined that the plaintiff had an extremely strong history for asbestos exposure and found a preponderance of medical evidence that strongly supported the diagnosis of asbestosis.
12. Dr. Dula examined the plaintiff and made findings entirely consistent with asbestosis.
13. In November of 1999, Dr. Johnson of the Rowan Medical Center obtained a new CT scan of Gainey and diagnosed severe pleural and interstitial changes consistent with asbestosis.
14. Dr. Proctor, a pulmonologist in Salisbury, examined the plaintiff on 24 November 1999. Dr. Proctor concluded that the plaintiff had asbestosis and pleural plaques related to asbestos exposure.
15. Dr. Rostand, the panel physician appointed by the North Carolina Industrial Commission to examine plaintiff, diagnosed plaintiff with Class II respiratory impairment consistent with asbestosis. Dr. Rostand determined the impairment was as result of asbestos exposure, writing: "Mr. Gainey has classic asbestos related disease of lung and pleura as manifested by the changes on chest x-ray and high resolution CT scan of chest. It is this examiner's opinion that the proximate cause of these changes was his occupational exposure to asbestos while employed by Southern Flooring and Acoustical."
16. On 15 January 2000, Dr. Lucas, a radiology and internal medicine expert in Jackson, Mississippi found bilateral interstitial fibrotic changes consistent with asbestosis. Dr. Lucas is also a certified B-reader.
17. On 3 February 2000, Dr. Grauel of Cleveland, Ohio reviewed the x-rays and found that "asbestosis would be a likely consideration."
18. Plaintiff's employment with Southern Flooring and Acoustical Company provided exposure to airborne asbestos on a regular basis. Plaintiff was last injuriously exposed during employment with Southern Flooring and Acoustical Company with USFG on the risk.
19. Plaintiff was diagnosed by multiple doctors as having asbestosis.
20. As a result of his employment with defendant-employer Southern Flooring and Acoustical Company, the plaintiff has asbestosis.
21. There is currently insufficient evidence in this case to assess plaintiff's disability.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant-employer Southern Flooring and Acoustical Company and while USFG was on the risk. N.C.G.S. §97-57.
2. Plaintiff was exposed to the hazards of asbestos dust for as much thirty days, or parts thereof, within seven calendar months immediately preceding his last exposure. N.C.G.S. § 97-57.
3. Plaintiff was exposed to the inhalation of asbestos dust in employment in North Carolina for as much as two years inside of the ten years immediately preceding his last exposure. N.C.G.S. §97-63.
4. As a result of his employment with defendant-employer, the plaintiff was exposed to asbestos and has contracted the occupational disease asbestosis while USFG was on the risk. N.C.G.S. §§ 97-52;97-53(24).
5. Plaintiff is entitled to medical compensation as a result of his contraction of occupational asbestosis, including future medical monitoring for prescription medication and medical monitoring. N.C.G.S. § 97-59.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
Defendant USFG shall pay all medical expenses incurred, or to be incurred, by plaintiff as a result of his contraction of compensable occupational asbestosis.
 *********** ORDER
This matter is HEREBY REMANDED to a Deputy Commissioner for an immediate hearing and Opinion and Award regarding the disability suffered by the plaintiff as a result of his compensable occupational asbestosis.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER